| | |
|---|---|
| Ali Partovi, | No. CIV 09-0713-PHX-SRB (DKD) |
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Eric H. Holder, Jr.; Janet Napolitano; Katrina Kane, | |
| Respondents. | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

Ali Partovi filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 6, 2009, arguing that although he has been granted relief from removal, the government refuses to release him, and that his continued detention violates his constitutional rights. Respondents contend that the petition should be dismissed because (1) res judicata bars federal review; (2) it is a prohibited successive petition; and (3) his steadfast refusal to cooperate in obtaining travel documents justifies his continued detention. The Court will construe Partovi's petition as a claim alleging that his continued detention is in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001), and recommends that his petition be denied and dismissed with prejudice.

**BACKGROUND**

On October 22, 2001, Partovi applied for admission to the United States at Guam, coming from Japan, claiming to be a citizen of Iran, and using a fraudulent passport bearing

the name "Michelle Franchini" (Doc. #18, Exh 1). During detention by the then Immigration and Naturalization Service (INS), Partovi claimed to be an Armenian Catholic, born in 1968, who could not return to Iran because of his religious beliefs (*Id*., Exh 2). He was paroled into the United States for prosecution and placed into removal proceedings for a consideration of his applications for asylum, withholding and protection under the Convention Against Torture (*Id*., Exh 3).

In an attempt to verify Partovi's identity, the FBI learned from the Japanese National Police Agency that Partovi had a registration card issued by a Japanese municipality and that he had been married to and divorced from a Japanese national in the mid-1990's. The police also informed the FBI that Partovi had been arrested in 1994 for stealing a bicycle in Kodaira, Japan (*Id*., Exh 4). On October 22, 2001, the government referred Partovi to the immigration court for an asylum hearing (*Id*., Exh 5). On October 24, 2001, during his FBI interview, Partovi stated that he had applied to the Tokyo United Nations Office as a refugee in July, 2001. He also stated that he had applied for asylum at the Canadian Embassy in Tokyo (*Id*., Exh 4). However, both the Tokyo Office of the United Nations High Command for Refugees and the Canadian Embassy informed the FBI that no such application had been made by anyone using Partovi's name (*Id*.).

On November 14, 2001, Partovi was indicted for using a false passport to attempt to enter the United States; on April 17, 2002, he was convicted following a guilty plea in U.S. District Court for the District of Guam and sentenced to serve 175 days (*Id*., Exh 6, 7). On May 3, 2002, the immigration judge denied Partovi's application for asylum, finding it frivolous. In addition he also denied Partovi's requests for withholding of removal and found that he was ineligible for deferral of removal under the Convention Against Torture (*Id*., Exh 8). Partovi reserved appeal; the appeal was due at the Board of Immigration Appeals (BIA) by June 3, 2002 (*Id*.). On June 4, 2003, Partovi filed a motion for redetermination of custody with the immigration court; on June 10, 2003, the immigration judge denied the motion (*Id*., Exh 9). Partovi did not appeal to the BIA and on August 29, 2007, the Ninth Circuit Court

of Appeals denied Partovi's petition for review; on December 20, 2007, the court denied panel rehearing (*Id.*, Exh 66). On March 31, 2008, Partovi filed a Motion to Reissue the May 3, 2002 decision before the immigration judge; on August 1, 2008 the immigration judge denied it (*Id.*, Exh 10). On August 28, 2008, he appealed to the BIA; on November 12, 2008 the BIA dismissed the appeal (*Id.*, Exh 11).

On March 10, 2003, the INS sent a letter to the Interests Section of the Islamic Republic of Iran at the Pakistan Embassy requesting a travel document for Partovi. All Iranian citizens with final orders of removal were to be interviewed by embassy representatives in Florence, Arizona during the week of March 10, 2003 (*Id.*, Exh 12). On March 14, 2003, Partovi was summoned to appear and refused to enter the room, and after being escorted into the room, refused to sign any paperwork presented to him, including a Warning for Failure to Depart form. He also refused to be fingerprinted, and was physically forced to do so by immigration agents (*Id.*). On September 16, 2003, Immigration and Customs Enforcement (ICE) issued a Notice of Failure to Comply, which was received by Partovi on September 29, 2003 (*Id.*, Exh 13). On February 20, 2004, Iranian authorities notified ICE that a travel document could not be issued because Partovi did not submit either a birth certificate or an Iranian passport (*Id.*, Exh 13).

On April 30, 2004, Partovi was served with another Warning for Failure to Depart and an Instruction Sheet to Detainee Regarding Requirement to Assist in Removal. He refused to sign both documents; on May 10, 2004, he refused to complete a request for travel documents (*Id.*, Exh 15). Over the next *five* years, Partovi was served on 32 occasions with the above-mentioned warning and instruction sheet, often in conjunction with a Notice of File Custody Review. Each time he refused to sign both documents, and at least 9 times his refusal was followed by service of a Notice of Failure to Comply (*Id.*, Exh 16-61). On March 14, 2007, ICE served Partovi with a Release Notification and Order of Supervision. On March 28, 2007, he refused to sign the forms acknowledging the conditions of supervision, and was not released (*Id.*, Exh 45). On May 15, 2009, ICE issued an Order of

1 | Supervision allowing Partovi to be released from detention pending his removal to Iran. The
2 | Department cancelled the order because Partovi was being investigated by the FBI (*Id*., Exh
3 | 63, 64). On May 28, 2009, Partovi was again offered release on an Order of Supervision.
4 | The government had arranged for temporary housing in Pennsylvania through a social
5 | service agency; Partovi refused the offer because he did not want to live in Pennsylvania (*Id*.,
6 | Exh 64). Finally, on June 5, 2009, the Department served Partovi a Notice of File Custody
7 | Review, an Instruction Sheet to Detainee Regarding Requirement to Assist in Removal and
8 | a Warning for Failure to Depart. Again, he refused a request to place a fingerprint on the
9 | letter at the time of service, and refused to sign any of the documents (*Id.*, Exh 65).

Partovi filed his first habeas petition on June 6, 2003, and an amended habeas petition on June 4, 2004. *See Partovi v. Ashcroft*, CIV-03-1098-PHX-EHC (JJM). In his petition, he contended that he had been granted relief from removal, that because he did not speak English he was unable to communicate with the immigration judge, resulting in an order of removal, and that he had complied with the government's efforts to obtain travel documents. On September 7, 2005, he filed a motion for release claiming that his continued detention violated his constitutional rights. The District Court adopted the Magistrate Judge's recommendation that the Court lacked jurisdiction to review any allegations regarding the entry of Partovi's final order of removal. The District Court also adopted the Magistrate Judge's conclusion that Partovi had not been granted asylum in the United States, and that his continued detention did not violate his constitutional rights because he had not cooperated with the government's efforts to remove him. On April 6, 2009, Partovi filed this petition, again arguing that his continued detention violates his constitutional rights.

**DISCUSSION**

Respondents first argue that this Court lacks jurisdiction, arguing that *res judicata* bars federal review. Because "it is axiomatic that *res judicata* is inapplicable in habeas proceedings," the Court rejects this argument. *See Johnson v. Lumpkin*, 769 F.2d 630, 636 (9th Cir. 1985). Respondents also contend that Partovi's petition is a prohibited second or

successive petition because the legality of Partovi's detention was determined by the Court in his previous habeas petition. While the Court agrees that it need not redetermine the legality of his detention up to June 4, 2004, the date of his amended petition, no federal court has yet ruled on Partovi's continued detention since that date. Therefore, the legality of his continuous detention from June 2004 until his petition was filed in April 2009 is properly before the Court.

In *Zadvydas*, the Supreme Court established a six-month period during which continued detention is presumptively reasonable. Following this six-month period, an alien may be confined "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. In addition, there is statutory authority for continued detention:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal.

8 U.S.C. § 1231(a)(1)(C).

In this case, Partovi's continued detention is a direct result of his long-standing failure to cooperate with or assist in his removal. Partovi admits in his Reply that he has refused to sign the required documents and has refused to cooperate in obtaining travel documents for "more than seven years" (Doc. #29). In such cases, the removal period can be suspended, and the limitation announced in *Zadvydas* does not apply. *See Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003). Partovi's long history of refusing to cooperate with his removal supports his continued detention.

**IT IS THEREFORE RECOMMENDED** that Ali Partovi's petition for writ of habeas corpus be **denied and dismissed with prejudice** (Doc. #1).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because Partovi has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 4th day of May, 2010.

_____
David K. Duncan
United States Magistrate Judge